UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRISTOPHER FRANCOIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-3522** |
| **WARDEN JERRY MILLER, MAJOR M. TODD, CAPTAIN DARRYL MIZELL, WARDEN RONALD BRANCH, SERGEANT KENTON SMITH, AND MASTER SERGEANT BILLY HILL, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES** | **SECTION "A"(4)** |

## REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss (Rec. Doc. No. 15)** filed by the defendants, Assistant Warden Jerry Miller, Major Michael Todd, Captain Darryl Mizell, Assistant Warden Ronald Branch, Sergeant Kenton Smith, and Sergeant Billy Hill, pursuant to Fed. R. Civ. P. 12(b)(6) urging dismissal of the plaintiff's claims against them in their official and individual capacities for failure to state a claim for which relief can be granted. The motion, along with the entire matter, was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2). On March 30, 2009, the undersigned Magistrate Judge conducted a hearing pursuant to

*Spears v. McCotter*,[1] and its progeny, with the plaintiff, Christopher Francois, and counsel for the defendants participating by telephone.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

I. **Factual Summary**

   A. **The Complaint**

The plaintiff, Christopher Francois ("Francois"), filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Assistant Warden Jerry Miller, Major Michael Todd, Captain Darryl Mizell, Assistant Warden Ronald Branch, Sergeant Kenton Smith, and Sergeant Billy Hill, each in their official and individual capacities. Francois is seeking damages and injunctive relief as a result of alleged retaliation, denial of access to the courts, and deprivation of property without due process.

Francois alleges that, on December 14, 2008, Warden Miller and Major Todd wrote false disciplinary reports against him charging him with authoring and mailing letters to Warden Tanner and Major Todd in which he threatened to harm Lieutenant Ronnie Seal and Master Sergeant Mickey Dillion. He claims they were assisted by the investigative officer, Captain Mizell. He was found guilty by Warden Branch in the disciplinary hearing and sentenced to extended lockdown level one. Francois contends that this was done in response to lawsuits he brought against some security officers and to separate him from his legal materials.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. *Spears*, 766 F.2d at 180. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991).

[2] Rec. Doc. No. 20. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

2

He further claims that he was transferred to the Sleet Unit to serve his lockdown sentence. He claims that his legal property was kept in a file cabinet on that tier but part of it was destroyed by Sergeant Smith and Sergeant Hill, including a new lawsuit he was preparing to file. He claims that these officers worked the night shifts between December 12 and 14, 2008, during which time they searched, rearranged, and destroyed some of his legal property. Among this property were witness lists in connection with a lawsuit, institutional responses to grievances he filed, and a report granting his appeal and dismissing the false disciplinary reports which led to his lockdown. This, he claims, also caused the denial of access to the courts.

As relief, Francois seeks a transfer to another facility pending resolution of this lawsuit, compensatory damages for the loss of privileges and quality of life in his prison living conditions for everyday he was in lockdown, punitive damages against the defendants individually for their willful and malicious conduct in carrying out the conspiracy complained of in the complaint, and nominal damages for the violations of his constitutional rights. Finally, Francois requests that the Court order that the defendants be demoted in rank and pay.

**B.**     **The *Spears* Hearing**

Francois testified that he is currently incarcerated on a conviction for armed robbery. He was sentenced to ten years and has about two years left on his sentence. Francois also stated, relevant to this case, that he was called out of his cell on Sun Unit L3 by a lieutenant and placed in handcuffs. He was then taken to administrative segregation but was not told why. Over the next two days, he was given copies of two disciplinary write-ups charging him with writing two letters, one sent to the Warden's office and one to a lieutenant's office, in which he threatened two correctional officers. He was eventually taken to a disciplinary hearing where he told Warden Branch that he did not write

3

the letters. He was nevertheless found guilty of writing both letters and he was sentenced to serve two months in extended lockdown.

Francois further testified that, while he was on extended lockdown, his legal documents were taken from him and placed in a file cabinet at the end of the tier. He stated that he was not allowed to keep those documents in his cell over the weekend, so they were taken from him on a Friday. He further testified that, while the documents were in that file cabinet, some or all of the documents were destroyed or disappeared.

Francois testified that he filed an administrative grievance complaint about this incident, which he claims to have exhausted through the second-step. He also indicated that the prison officials found his claims to be unsubstantiated.

Francois further testified that he sued Warden Miller because he turned the first letter over to Captain Mizell and told him that it was in Francois's handwriting. Captain Mizell was the investigating officer who confirmed the Warden's allegations and presented Francois with the first disciplinary write-up.

Francois sued Major Todd because he delivered the second disciplinary write-up to Francois. He also told him that Captain Mizell had also confirmed that the second letter was written in his handwriting.

He further testified that he named Warden Branch as a defendant because he was on the disciplinary board and he determined that Francois was guilty.

Finally, Francois stated that he sued Sergeant Smith and Sergeant Hill because they were the only officers on duty on the weekend that his legal documents were destroyed in the file cabinet. He stated that they must have been responsible for the destruction.

As relief, Francois stated that he intended to leave the award of compensatory damages up to the Court. He also indicated that he would like a transfer to avoid future actions by the defendants. He also asked that the Court reduce the ranks and salaries of the defendants to prevent them from harming other inmates in the future.

## II. Defendant's Pending Motion

### A. Defendants' Argument

The defendants filed a Motion to Dismiss in which they urge dismissal of the plaintiff's claims for injunctive relief brought against them in their individual capacities because such claims can only be brought against them in their official capacities. They seek dismissal of the claims for injunctive relief against them in their official capacities because such relief is only available to prevent violation of the constitution and federal law, which Francois has failed to establish. The defendants also seek dismissal of the plaintiff's claims for monetary damages urged against them in their official capacities because they are not "persons" for purposes of § 1983. Finally, they seek dismissal of the remaining claims against them in their individual capacities because they enjoy qualified immunity and Francois has not stated a claim for which relief can be granted against them.

### B. Plaintiff's Opposition

The plaintiff opposes the motion by first noting that he intended to sue the defendants for monetary damages in their individual capacities and for injunctive relief in their official capacities. He further argues that the facts in the complaint are sufficient to establish a constitutional violation and the defendants' motion based on qualified immunity should be denied.

**III. Standards of Review**

    **A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The United States Supreme Court has held that Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court went on to clarify: "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 1949 (quoting *Bell Atl. Corp.*, 550 U.S. at 555, 557) (internal citations omitted) (alteration in original).

"Factual allegations must be enough to raise a right to relief above the speculative level on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.*, 550 U.S. at 555-56 (quotation marks, citations, and footnote omitted) (uppercase and parenthetical in original). Thus, to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (recognizing a change in the standard of review). Plausible grounds "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Bell Atl. Corp*, 550 U.S. at 556. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)). "But, where the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2)." *Ashcroft*, 129 S. Ct. at 1950.

In resolving a Rule 12(b)(6) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint. However, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pa. Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). While conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

Further, the United States Fifth Circuit Court of Appeals has held that, when reviewing *pro se* complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In *Taylor v. Gibson*, the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

529 F.2d 709, 713-14 (5th Cir.1976); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

B. **Qualified Immunity**

The doctrine of qualified immunity protects government officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As recognized by the defendants in their motion, qualified immunity for an alleged constitutional violation is determined by a two-step analysis. *Lytle*, 560 F.3d at 409.

The first step asks the question "whether, taking the facts in the light most favorable to the plaintiff, the officer's alleged conduct violated a constitutional right." *Id*. at 410. Only **if** the court determines that there was a constitutional violation, does it move to the second step, which involves "determining whether the law was sufficiently clear that a reasonable officer would have known that his conduct violated the constitution. *Id*. In other words, the Court must ask "whether the law lacked such clarity that it would be reasonable for an officer to erroneously believe that his conduct was reasonable." *Id*.

In this case, the defendants argue that Francois has failed to state a cognizable federal claim for which relief can be granted. The Court agrees for the reasons set forth below. The Court need not engage in a discussion of the second step of the qualified immunity defense since the record fails to support a finding favorable to the plaintiff under the first step.

IV. **Analysis**

In the complaint, Francois originally named the defendants each in their official and individual capacities and sought relief from them without distinguishing between the capacities. In

8

response to the defendants' motion to dismiss, Francois now claims that his intent was to seek only injunctive relief against the defendants in their official capacities and to seek only monetary relief against them in their individual capacities. He has not amended the complaint to make this clarification.

Francois presents the Court with several basic claims. First, he challenges the integrity of the disciplinary charges and proceedings arising from the two threatening letters which led to his extended lockdown sentence. He also alleges that the defendants have acted in retaliation to his filing of another civil rights complaint against other officers. In recompense, he seeks monetary damages and declaratory and injunctive relief arising from these alleged violations. As argued by the defendants, Francois has failed to state a claim against the defendants or establish his entitlement to relief for the following reasons.

> **A.    The Claims Against the Defendants' in their Official Capacities and the Plaintiff's Requests for Declaratory and Injunctive Relief**

Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his constitutional rights. 42 U.S.C. § 1983 (2006). A plaintiff must prove both the constitutional violation and that the action was taken under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981). However, as argued by the defendants, a state actor in his official capacity is not considered to be a person for purposes of suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). In keeping with its long-standing doctrine, the Supreme Court has held that, when a state actor is sued in his official capacity, the action is considered to be one taken against the department he represents. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).

In this case, these defendants are employed by the Louisiana Department of Corrections ("DOC"), which is a department within the Louisiana state government. La. Rev. Stat. Ann. § 36:401 (2008). For Eleventh Amendment purposes, the DOC is considered an arm of the state since any money judgment against it or its subdivisions necessarily would be paid from state funds. *Anderson v. Phelps*, 655 F. Supp. 560, 564 (M.D. La. 1985). Therefore, suit against the State, the DOC, and its employees in their official capacities implicates the Eleventh Amendment immunity doctrine. *Muhammad v. Louisiana*, No. 99-2694 c/w 99-3742, 2000 WL 1568210 (E.D. La. Oct. 18, 2000); *Citrano v. Allen Corr. Ctr.*, 891 F. Supp. 312, 320 (W.D. La. 1995) ("A suit against any state correctional center would be suit against the state and therefore barred by the Eleventh Amendment.") (citing *Anderson*, 655 F. Supp. at 560; *Bldg. Eng'r Serv. Co. v. Louisiana*, 459 F. Supp. 180 (E.D. La. 1978)).

The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own State. *Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir.1986). A state may expressly waive this Eleventh Amendment sovereign immunity. *See Edelman v. Jordan,* 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed "unequivocally"); *Welch v. Dep't of Highways,* 780 F.2d 1268, 1271-73 (5th Cir.1986). However, the State of Louisiana has not done so.

To the contrary, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court." Accordingly, the Court would be without jurisdiction to hear the plaintiff's claims for monetary relief against the State of Louisiana, the DOC, or the named defendants in their official capacities. *See Warnock v. Pecos County, Tex.,* 88 F.3d 341, 343 (5th Cir. 1996). However, under a broad reading in this case,

Francois has already conceded that he has no claim for monetary damages against the defendants in their official capacities.

As both the movants and the plaintiff also recognize, the Eleventh Amendment does not protect state officials from claims for prospective injunctive relief when it is alleged that the state officials are acting in violation of federal law. *Ex Parte Young*, 209 U.S. 123, 155-56 (1908); *Edelman*, 415 U.S. at 664; *Brennan v. Stewart*, 834 F.2d 1248, 1252 (5th Cir. 1988). To meet this exception in its application to a § 1983 suit, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect. *See Saltz v. Tenn. Dep't of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992). Thus, while declaratory and prospective injunctive relief can not be pursued against the State in federal court, it can be pursued against a state official sued in his official capacity.

However, in this case, Francois's claims against the defendants in their official capacities and those against them in their individual capacities can be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) for the reasons set forth in this report. Having failed to present a cognizable violation of his constitutional rights, Francois is not entitled to declaratory or injunctive relief against the defendants.

As discussed in the defendants' motion, it is well settled that the Due Process Clause does not, by itself, give a prisoner a protected liberty interest in the location of his confinement even if the environment of one prison may be "much more disagreeable" to the prisoner than in another. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Furthermore, as will be discussed, Francois has failed to state a constitutional violation for which he is entitled to relief. Therefore, the Court can not declare that his rights were violated by the defendants. Having resolved these matters, the Court

will consider the remaining claims seeking monetary damages against the defendants in their individual capacities.

### B. Challenges to the Disciplinary Charges and Loss of Privileges

Francois claims that the defendants acted in conspiracy and in violation of his due process rights when they charged him with and found him guilty of writing the two threatening letters. He denies having written the letters and suggests that the charges were placed against him as part of a conspiracy to retaliate against him, a claim addressed later in this report. Francois fails to state a claim for which relief can be granted by this Court.

#### 1. Conspiracy

First, Francois's use of the word conspiracy is not supported in his complaint or through his *Spears* testimony. Mere conclusory allegations of conspiracy are not sufficient to present a successful claim in civil rights cases. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995); *Dayse v. Schuldt*, 894 F.2d 170, 173 (5th Cir. 1990); *Van Cleave v. United States*, 854 F.2d 82, 84 (5th Cir. 1988). In several instances, *pro se* actions alleging violation of constitutional rights brought by prisoners have been dismissed where they asserted wholly conclusory, non-specific allegations. *See*, *e.g.*, *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995) (conclusory claims of inadequate medical and dental care); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (conclusory allegations of conspiracy); *Dayse*, 894 F.2d at 172-73 (plaintiff "wholly unable" to make fact-specific allegations of conspiracy). Like these cases, Francois's reference to a non-specific conspiracy fails to state a claim for which relief can be granted.

## 2. False Disciplinary Charges

Next, to the extent Francois seeks relief, under a broad reading, because the disciplinary charges against him were allegedly false, he also has failed to state a claim for which relief can be granted. The United States Fifth Circuit Court of Appeals has held that a prisoner's claim for false disciplinary infractions "is indistinguishable from a malicious prosecution claim." *Ordaz v. Martin*, No. 93-4170, 1993 WL 373830, at *6 (5th Cir. Sept. 15, 1993); *see also Bradley v. Hammonds*, No. 97-30287, 1998 WL 699106 at, *2 (5th Cir. Sept. 22, 1998). The current law in the Fifth Circuit dictates that there is no "freestanding constitutional right to be free from malicious prosecution." *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003). Therefore, a prisoner's claim that disciplinary proceedings were wrongly initiated against him fails to state a claim upon which relief may be granted. *Figgs v. Vrazel*, 106 F. App'x 260, 261 (5th Cir. 2004); *see also Williams v. Dretke*, 306 F. App'x 164, 166 (5th Cir. 2009); *Palmisano v. Bureau of Prisons*, 258 F. App'x 646, 648 (5th Cir. 2007) (a prisoner's "assertion that defendants brought false charges against him does not alone implicate his constitutional rights").

## 3. Disciplinary Proceedings

The remainder of Francois's challenges to the disciplinary proceedings are barred from federal review by *Sandin v. Connor*, 515 U.S. 472 (1995). To resolve whether a prisoner has a due process claim relating to prison disciplinary action, the Court must first determine whether a constitutionally protected liberty interest exists. *Id.* at 481-83. "Liberty interests protected by the Fourteenth Amendment may arise from two sources--the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

In *Sandin*, the Supreme Court recognized that although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (citations omitted). Thus, in *Sandin*, where a prisoner was placed in disciplinary segregation for 30 days and the discipline did not inevitably affect the duration of his sentence, the Court held that due process does <u>not</u> require that a prisoner be afforded the procedural mechanisms previously prescribed in *Wolff v. McDonnell*, 418 U.S. 539 (1974) and *Hewitt*, 459 U.S. at 460.

Similarly, the denial of other privileges, like access to personal items and other privileges, like those raised in the instant case, is not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and is within the expected contours of plaintiff's criminal sentence. *Sandin*, 515 U.S. at 484, 486 n.9; *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990) ("A prisoner does not retain constitutional rights that are inconsistent with the legitimate penological objectives of the correction system.") Accordingly, no substantive due process deprivation arose from Francois's disciplinary proceedings or the review thereof. He also was not entitled to any particular procedures before he was denied other privileges as a result of his disciplinary conviction.

Thus, Francois's claims that he is entitled to prospective injunctive relief, such as transfer and the defendants' demotion, to avoid future deprivations of his Fourteenth Amendment due process rights or for monetary damages arising from his disciplinary proceedings fail to state a claim for which relief can be granted. He has failed to establish violation of those rights by the defendants either in their official or their individual capacities.

### C. **Claims of Retaliation**

As another facet of his challenge to the disciplinary charges and proceedings, Francois also suggests that the charges were placed in retaliation for the exercise of his first amendment right to

access the courts, "due to his lawsuit against a portion of security and to separate in addition to rid him of his legal materials."[3]

A prison official may not retaliate against or harass an inmate for exercising his right of access to the courts or his other First Amendment rights. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). To establish a claim of retaliation, a prisoner must show: "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bishop v. Does*, No. 08-20645, 2009 WL 3444787, at *2 (5th Cir. Oct. 26, 2009) (slip op.) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

In addressing the factors listed above, the Fifth Circuit has stated that an adverse act under the third prong is an act "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." The Court stated that "this [de minimis] threshold is intended to weed out only inconsequential actions and is not a means to excuse more serious retaliatory acts by prison officials." *Id*. With respect to the fourth factor, a prisoner shows causation by establishing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods*, 60 F.3d at 1166.

The Fifth Circuit has also cautioned that "[t]o assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims." *Woods*, 60 F.3d at 1166. For this reason, "mere conclusory allegations of retaliation" or a prisoner's own beliefs are insufficient to establish retaliation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999); *see also Randle v. Woods*, 299

---

[3]Rec. Doc. No. 1, p.5¶IV(1).

F. App'x 466, 468 (5th Cir. Nov. 19, 2008). Instead, a prisoner must either "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Jones*, 188 F.3d at 325.

In this case, Francois claims that these disciplinary charges were pursued against him in retaliation for his filing of a previous civil action and part of a conspiracy to deprive him of his legal materials, which allegedly were destroyed while he was in disciplinary confinement. Francois has provided no specifics about the previous lawsuit. His claims of retaliation and conspiracy are entirely conclusory and are devoid of any facts or chronology of events that would support an inference of a causation or retaliatory motive on account of the prior lawsuit against other security staff members. He also has not alleged that he was deterred from further exercising his constitutional rights as a result.

Francois's complaint and *Spears* testimony are not sufficient to state a claim of retaliation for which relief can be granted.

### D.     Loss of Documents and Denial of Access to the Courts

Francois also alleges that his legal documents were destroyed by Sergeants Hill and Smith over a weekend while he was housed in disciplinary segregation. He testified at the *Spears* Hearing that he believes these two officers to have been responsible because they were on duty that weekend and had access to the file cabinet where his legal documents were being held. He alleges that the loss of the documents included documents for a pending lawsuit and for a lawsuit he planned to file, all in violation of his First Amendment rights.

With respect to Francois's claim that his papers were lost or destroyed, the Due Process Clause is not implicated. Due process does not protect a person from the random loss of property, whether by intentional or unintentional act of a state actor, so long as the inmate has a meaningful

post-deprivation remedy. *Hudson*, 468 U.S. at 531; *see also Parratt v. Taylor*, 451 U.S. 527 (1981).[4] Louisiana's tort laws provide an adequate post-deprivation remedy for Francois to pursue. Pursuant to La. Civ. Code Art. 2315, *et seq.*, the plaintiff has the right to sue any person whom he believes has caused him damage as a result of the loss of his property.[5] This is an adequate state post-deprivation remedy which prevents Francois from pursuing his claims under § 1983. *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984) (noting that La. Civ. Code Art. 2315 is adequate state remedy to redress loss of prisoner's property); *Harrell v. Matthews*, No. 94-1431, 1994 WL 449451, at *1 (E.D. La. Aug. 16, 1994) (same). Francois therefore has no legal basis for seeking relief under § 1983 and his claim should be dismissed for failure to state a claim for which relief can be granted.

The loss of the legal materials claim also fails to state a denial or interference with his right to access to the courts and therefore also fails to state a claim for which relief can be granted. A prisoner's constitutional right to access the courts is an aspect of his First Amendment right to petition the government for redress of grievances. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond a doubt that prisoners have a constitutional right of access to the courts."); *see also Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."). This right of access for prisoners is not unlimited, however. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

Prisoners are "not guarantee[d] the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims."

---

[4]*overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986); *see also Arnaud v. Odom*, 870 F.2d 304, 308 (5th Cir.), *cert. denied, sub nom*, 493 U.S. 855 (1989).

[5]La. Civ. Code Art. 2315 provides in relevant part that "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

*Lewis v. Casey,* 518 U.S. 343, 355 (1996). Instead, prisoners are guaranteed "the conferral of a capability - the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 351; *Johnson*, 110 F.3d at 310. Thus, the United States Fifth Circuit has resolved that "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir.1993) (footnotes omitted).

Based on the foregoing, the law is clear that the right is limited to "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Lewis*, 518 U.S. at 356. The prisoner's right to access to the courts is protected only if the underlying claim sought to be pursued is not frivolous. *See Lewis*, 518 U.S. at 353 n.3 ("Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.").

Furthermore, to state a claim that the constitutional right of access to the courts was violated, a prisoner must demonstrate that his position as a litigant was actually prejudiced. *Lewis*, 518 U.S. at 351-52; *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996); *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993) (citing *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1992)). The inmate must demonstrate that the acts of the prison officials prevented his efforts to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 351. In this case, Francois fails to allege this actual injury/legal prejudice element of his First Amendment claim.

As noted by the defendants in their motion, Francois has failed to identify in his complaint or at the *Spears* Hearing any particular non-frivolous lawsuit that was prejudiced or diminished in some way because of the lost papers. He also has not demonstrated that he was unable to pursue the

"new" lawsuit or that it related to a non-frivolous claim challenging his conviction or the conditions of his confinement.

This Court's records reflect that Francois filed a petition in this Court on May 20, 2008, in Civ. Action No. 08-3485"A"(4), in which he alleged that he suffered excessive force at the hands of several officers at RCC, none of whom are named as defendants in the instant case. The record in that case demonstrates that Francois was able to file pleadings with the Court on December 29, 2008, just two weeks after the alleged loss of his papers, and he did so monthly thereafter through April of 2009. Upon the recommendation of this Magistrate Judge, on May 14, 2009, the District Judge granted the defendants' motion for summary judgment and dismissed the complaint for failure to exhaust administrative remedies.[6]

Shortly thereafter, Francois was able to file another lawsuit, Civ. Action No. 09-4505"N"(4), on July 23, 2009, raising the same claims as the prior suit. That case is still pending.

A review of these cases does not indicate that the alleged loss of legal documents on or after December 14, 2008, impacted his ability to file pleadings and respond to the Court's orders in Civ. Action No. 08-3485"A"(4) or his ability to file two additional lawsuits, Civ. Action No. 09-4505"N"(4) and the instant case, Civ. Action No. 09-3522"A"(4). Because Francois has offered no other references to other cases or particular claims he could not pursue, he has failed to meet his burden necessary to state a claim for denial of access to the courts.

---

[6]Civ. Action No. 08-3485"A"(4), Rec. Doc. Nos. 57, 63, 64.

## V. Recommendation

It is therefore **RECOMMENDED** that the **Motion to Dismiss (Rec. Doc. No. 15)** filed by the defendants, Assistant Warden Jerry Miller, Major Michael Todd, Captain Darryl Mizell, Assistant Warden Ronald Branch, Sergeant Kenton Smith, and Sergeant Billy Hill, be **GRANTED**.

It is further **RECOMMENDED** that the plaintiff's § 1983 claims seeking monetary damages against the defendants in their official capacities be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim for which relief can be granted because the claims are barred by the Eleventh Amendment and the Court is without jurisdiction to consider such claims.

It is further **RECOMMENDED** that the plaintiff's § 1983 claims seeking declaratory and injunctive relief against the defendants in their official and individual capacities and the plaintiff's § 1983 claims seeking monetary damages against the defendants in their individual capacities be **DISMISSED WITH PREJUDICE** for failure to state a claim for which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 10th day of November, 2009.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**